THE COMMONWEALTH OF PUERTO RICO, Petitioner, *v.* SUPERIOR COURT OF PUERTO RICO, EMINENT DOMAIN DIVISION, PEDRO SANTOS BORGES, JUDGE, Respondent; JOSÉ RAMÓN AMADOR SAAVEDRA, Intervener.

No. O-69-192.     Decided March 9, 1970.

*Gilberto Gierbolini, Solicitor General, J. F. Rodríguez Rivera, Acting Solicitor General,* and *Ida Cardona Hernández Ore-*

*stein, Assistant Solicitor General,* for petitioner. *Clemente Pérez Martínez* for intervener.

PER CURIAM: The Commonwealth filed on October 23, 1967 an action to condemn a parcel of land of 285.05 square meters situated in the town of Hatillo and the buildings erected thereon, naming as interested parties, among others, the municipality of Hatillo, in whose name the lot appeared recorded, Pedro Amador Hernández and his wife María Saavedra, as usufructuaries of the lot, and José Ramón Amador Saavedra and his wife Nydia Toledo, owners of the buildings. The sum of $7,057 as the value of the right of usufruct and of the buildings (case E-67-799) and $1 in favor of the Municipality "for any possible interest which it may have" (Case E-67-798) was deposited as compensation. On the following November 17 a motion to withdraw funds filed by the spouses Amador-Toledo was granted and it was ordered to deliver the sum of $7,057 to them.[1]

Several months later, on June 7, 1968, the condemning party appeared by a motion which it entitled "about an amendment to Exhibit A" where it was stated in essence that the sum of $7,057 which had been deposited in case E-67-799 was distributed in the following manner: $3,961 for the buildings and $3,096.60 for the lot; that according to a certificate of the registry, the right of usufruct of the lot did not appear recorded in the name of the spouses Amador-Toledo, and that if the municipality had agreed to the grant of the usufruct in favor of the former, such act would be contrary to Act No. 166 of May 13, 1941, 21 L.P.R.A. § 777

---

[1] Everything which appears in the original record is a copy of the minutes which refer to the delivery order. The motion about withdrawing funds, if it was filed in writing, is not attached to the record. Only on the front page there appears a note which reads: "Defendant José Ramón Amador and his wife are the only owners with interest in the property in the above-entitled case. (Stip.) Tax paid according to a certificate examined. Issue check for the amount deposited w/interest."

*et seq.,*[2] because the lot had not been used for dwelling purposes, but for renting commercial premises.[3] By virtue thereof it requested that the sum of $3,096.60 which corresponded to the appraised value of the lot be transferred to case E-67-798 in order that such sum would be placed at the disposal of the Municipality of Hatillo.

In order to submit this incident the State and the spouses Amador-Toledo stipulated the following facts:

"1.—That the first entry of property No. 1738 was made in favor of the Municipality of Hatillo by title of ownership[4] at folio 220 of volume 32 of Hatillo.

"2.—That on February 13, 1914 the Municipality of Hatillo granted said lot in usufruct for the first time to Francisco González. Said lot was 'granted to the use and without ownership and for an unlimited time,' according to the certificate issued by Pedro J. Navas, Municipal Secretary, presented in the Registry of Property.

---

[2] "Section 1.—The municipalities of Puerto Rico are authorized to appropriate and spend up to six (6) percent of the total amount of their regular budgets for each year, excluding the proportion fixed by law for public education, insular and local health, and other attentions whose proportion is fixed by law, for the purchase, acquisition, and urbanization of lands contiguous to the urban district thereof, in order to grant and distribute the lots on said lands, solely in usufruct and exclusively to heads of families that have no home available or any property whose value exceeds one thousand (1,000) dollars, or that have no other property than a home whose cost and value does not exceed said amount and is located in some slum of the urban district of the Municipality, to the former for building on said lots, and to the latter for transferring thereto a house to be used for a dwelling exclusively, the cost and value of which does not exceed one thousand (1,000) dollars."

[3] "Section 2.—It shall not be permitted to use the houses erected on the lots granted in accordance with the provisions of this Act, or transferred thereto, for any purpose except for the family home of the grantee of the lot, and they cannot be used for rent or for the exploitation of any business; *Provided,* That in the case of workmen who have a trade, they have engaged in the work suitable to the same in the dwellings that they occupy."

[4] According to the certificate of the registry the property with the greater area from which this lot was segregated was acquired in or before 1914 by grant of Agustín Ruiz Miranda.

"3.—That by ordinance No. 10 dated October 3, 1953, the Municipality of Hatillo granted the right of usufruct over said lot to Ana Lydia Delgado. (A copy of the Registry of Municipal Lots where said lot is identified with the number 038-011-16 appears attached to the record.)

"4.—That by ordinances No. 22 of April 21, 1954 and No. 14 of May 16, 1958, the sale of said lot to Ana Lydia Delgado was authorized at the rate of $2.00 per square meter.

"5.—That Ana Lydia Delgado never availed herself of the provisions of said ordinances to acquire the ownership title of the lot at the rate of $2.00 per square meter.

"6.—That by public deed No. 52 executed in Hatillo, Puerto Rico, on May 26, 1962 before Notary Ángel G. Avila, José Ramón Amador Saavedra acquired from Pedro Amador Hernández and others, the following real property:

[Description of the buildings]

"7.—That the aforementioned deed was recorded at folio 239 of volume 92 of Hatillo, property No. 1738 in triplicate, fourteenth entry. (A certified copy of said deed appears attached to the record.)

"8.—That in turn Pedro Amador Hernández had acquired the aforedescribed real property by purchase from Emilio [sic] Ruiz Hernández, as it appears in public deed No. 3 executed in Arecibo, Puerto Rico on January 16, 1958 before Notary Public Isaías Manuel Crespo, recorded at folio 237 of volume 92 of Hatillo, property No. 1738 in triplicate, thirteenth entry. (Certified copy of said deed is attached.)

"9.—Defendant's title does not originate from any ordinance of the Municipality of Hatillo *but it does proceed from predecessors in title who derived theirs from that originally granted to Ana Lydia Delgado,* as it appears from the sales which were duly recorded in the Registry of Property. (See Certificate of the Municipal Auditor of the Municipality of Hatillo dated August 15, 1968 which appears attached to the record.)

"10.—That the existing structure in the lot is divided in commercial premises, which are leased . . .

"11.—.

"12.—That the Honorable Mayor of Hatillo appeared before this Honorable Court and moved for the acknowledgment of the interest in the lot which could correspond to said municipality.

"13.—That the appraiser for the State assessed the value of the lot at $3,096 and the value of the structure at $3,961 to make a total of $7,057 which was the amount deposited."

In denying the petition for amendment the court appealed from held that (a) Act No. 166 of May 13, 1941, *supra*, was not applicable because the original grant of the usufruct by the Municipality of a date prior to 1941, and (b) the right of naked property of the Municipality "could be compensated by the Commonwealth of Puerto Rico without affecting the usufructuary's rights," suggesting that as it appeared that the Municipality was willing to sell its right at the rate of $2.00 per square meter, "the municipality's right could be compensated at $516.10."

The Commonwealth assigns that the trial court erred (a) in determining that Amador was a usufructuary of the condemned lot; (b) in not determining any right over the real property in favor of the Municipality of Hatillo, and (c) in determining that, assuming that Amador would have had a usufructuary title over the lot, he would be entitled to the total amount of $7,057 which had been deposited as the value of his rights.

It should be noted that there is no controversy about the value of the lot and the buildings and that, therefore, the obligation of the Commonwealth is not economically aggravated by any determination made on the existence or not of a usufructuary right in favor of Amador and of naked property in favor of the Municipality. In this proceeding its action is limited to obtaining the declaration of the title in its favor and to determining the amount to be deposited as a just and reasonable value of the condemned property. *People v. 632 Square Meters of Land,* 74 P.R.R. 897, 906 (1953). The Municipality, actually interested party—if the right of

usufruct of Amador is not recognized, the sum deposited as the value of the lot would correspond in its entirety to the Municipality—has not expressly appeared to make any claim of the fund deposited.[5] We doubt very much, that, in the absence of such claim, the State can raise the controversy about the respective rights of the naked property owner and the alleged usufructuary. Only in the case that it would be bound to deposit an additional sum to the one already deposited could its intervention in this aspect of the case be justified.

■ In any event, in conformance with the stipulation copied, the usufruct of the lot in question has been granted or recognized since 1914. Act No. 166 which is invoked, a special legislation approved for the benefit of the working class for the purpose of subserving the acquisition of dwellings is not applicable. The granting in usufruct of the condemned lot was governed by Act No. 40 of March 7, 1912 (Sess. Laws, p. 73),[6] or by § 70 of the Municipal Law of 1928, 21 L.P.R.A. § 262.[7] *Jiménez* v. *Alvarez*, 69 P.R.R. 299 (1948). The fact

---

[5] Although it was stipulated that the Mayor had requested the acknowledgment of the right to the lot which could correspond to the Municipality, he did not appear at the hearing of the motion or file any written allegation.

[6] "Section 1.—The Municipal council of any municipality is hereby authorized to grant, upon request, the use of any lot owned by the municipality and situated within the urban zone for the construction of buildings thereon.

"It shall be the duty of municipal councils to specify in such grants as they may make the respective rights of the grantor and of the grantee or his successors, with regard to the ownership of the buildings, the reconstruction thereof where the same shall have deteriorated or been destroyed, and such other provisions as may not be in conflict with this Act."

[7] The first paragraph of said section reads as follows:

"On petition, the municipal assembly may grant lots in perpetuity for the construction of houses thereon under such conditions as the assembly may determine by ordinance approved for the purpose; and where a lot has been granted as aforesaid, the owner of the house constructed thereon shall have the use of said lot during such time as he maintains on said lot a building in good condition, in accordance with regulations prescribed by said ordinance."

itself that the lot was offered for sale by the Municipality on two occasions, in 1954 and 1958, shows that Act No. 166 was not applicable as it only allowed the granting in usufruct.

It is true that in 1962 when Amador acquired the buildings the Municipal Law in effect did not authorize the municipalities to grant lots in usufruct. See, §§ 98 to 100 of the Municipal Law of 1960, 21 L.P.R.A. §§ 1651 to 1653. But this is not controlling because (a) it has not been established that the right to usufruct of that specific lot—that began to be granted in 1914—had reverted to the Municipality, and (b) said Act did not affect the power of the usufructuaries to grant, sell or convey the rights which they had acquired before its effectiveness, provided the conditions imposed by the law were complied with. *Jiménez* v. *Álvarez*, 69 P.R.R. 299 (1948).

Finally the Municipality having been included as defendant and duly summoned, any claim which it may have for its right of naked property should be addressed against the deposited fund,[8] unless it is established that the total value of the rights involved exceeds the market value of the dominion title. *People* v. *McCormick, etc.*, 78 P.R.R. 895, 902 (1956). 1 Orgel, Valuation under Eminent Domain, § 109; 4 Nichols, Eminent Domain, § 12.36; *State* v. *Lenox*, 237 N.E.2d 248 (Ind. 1968).

The writ issued will be quashed and the case remanded for further proceedings concerning the valuation of the right of naked property of the Municipality.

Mr. Chief Justice Negrón Fernández did not participate herein.

---

[8] Although two different numbers were assigned to them it is for the sake of procedure, considering that the real property to which the condemnation refers constitutes one physical unit.